UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO. 22-25 (MJD/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) |
| | ) GOVERNMENT'S TRIAL BRIEF |
| v. | ) ) |
| JUSTIN LYLE CUTBANK, | ) ) |
| Defendant. | ) |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorneys Bradley M. Endicott and Ruth S. Shnider, hereby submits its trial brief in the above captioned case. Included in this memorandum are a summary of the facts the Government expects the evidence will establish at trial and short briefing regarding possible evidentiary matters.

**I.     THE CHARGE**

Defendant Justin Cutbank is charged by Indictment with a single count of Felon in Possession of a Firearm as an Armed Career Criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  The case is set for a jury trial on Monday, October 24, 2022 in Courtroom 13E of the Minneapolis courthouse.  The Government estimates that its case-in-chief will take between two to three days.

II.     **THE ANTICIPATED FACTS AT TRIAL**

On November 19, 2020, officers with the Leech Lake Tribal Police were dispatched to the home of a woman with the initials D.F., who had called to report that her boyfriend, Defendant Justin Cutbank, has assaulted her in her home over the course of several hours. D.F. reported that Cutbank held her at gunpoint throughout the night, hit her in the face with a firearm, and threatened to kill her. D.F. described the gun as a short barrel gold colored shotgun.  She also reported that Cutbank was under the influence of drugs and alcohol, and was making paranoid accusations against her—such as that she had "listening devices" in her room and had people waiting outside the house to harm him.  Also at home during these events were D.F.'s two teenage sons, as well as D.F.'s two roommates.  D.F. said Cutbank eventually fled with his gun and her cell phone into the woods behind her house. She had a swollen lip where Cutbank hit her with the gun.

Not long after taking D.F.'s initial statement, police received a report from homeowners who lived about a half-mile from D.F. that a man was in their garage and refusing to leave. Officers from multiple agencies converged on the location and found Cutbank barricaded in the garage. Several hours of negotiations followed. Cutbank retreated into the attic of the garage and continued to make erratic and paranoid statements. Officers were eventually able to talk him down from the garage and into a chair in the corner, where he continued to refuse to surrender.  Cutbank told the officers he was armed. Ultimately, an officer tackled Cutbank to arrest him.  Cutbank actively resisted, including by biting the officer in the face and neck.  It took several officers to subdue him and take him into custody.

Cutbank did not have any weapons on his person at the time of the arrest. Accordingly, the next day, officers searched the wooded area between D.F.'s home and the garage where CUTBANK was arrested. Hidden in the woods behind D.F.'s house, the officers found a Marlin Model 100 .22 caliber rifle with no serial number, along with a knife, and D.F.'s cell phone.







A DNA analysis on the firearm returned a major male profile that matches to Cutbank.

## III.  THE GOVERNMENT'S EVIDENCE

The Government anticipates that its evidence at trial will broadly consist of the following:

- Testimony from D.F. about the events of November 18-19, 2020 when the defendant held her at gunpoint throughout the night, and then fled with the gun into the woods behind her house.

- Photographs of D.F.'s injuries on the morning of November 19, 2020, as well as a diagram of her home.

- Testimony from one or more of the other occupants of D.F.'s home about observing the defendant with the firearm, as well as D.F.'s excited utterances after the defendant departed about what had occurred overnight.

- Recordings and/or videos of D.F.'s statements to law enforcement about the assault with the firearm.

- Testimony from one of the homeowners who discovered the defendant barricaded in their garage.

- Testimony from law enforcement officers about the garage "stand-off" with the defendant, and the eventual struggle and arrest.

- Photos and/or clips of officer body-worn camera that capture the garage and portions of the standoff with the defendant.

- Testimony from one or more officers who found the gun, knife, and cell phone in the woods behind D.F.'s home.

- Physical evidence (and photographs of physical evidence) recovered from the woods: the Marlin firearm, knife, and cell phone.

- Testimony from BCA forensic scientists who swabbed the firearm and performed a DNA analysis, locating a major male DNA profile that matches to the defendant's known DNA sample.

- Certified court records and fingerprint cards (and related testimony) regarding the defendant's prior felony convictions, in the absence of a stipulation.

- Testimony from an ATF firearms expert regarding the interstate nexus of the seized Marlin firearm, in the absence of a stipulation.

## IV. ANTICIPATED EVIDENTIARY AND LEGAL ISSUES DURING TRIAL.

### A. Motions *In Limine*

The United States filed seven motions *in limine*. These motions include standard requests made by the Government prior to jury trials (MILs #1-4); a motion related to the issue of the defendant's voluntary intoxication (MIL #5); a motion regarding Rule 609 impeachment if the defendant testifies (MIL #6), and a motion regarding Rule 404(b) evidence (MIL # 7). The Government rests on the arguments and authorities set forth in the motions themselves.

### B. Stipulations

The parties anticipate that the defendant will enter into a stipulation pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997) regarding his felon status, and regarding the timing of his prior convictions under the ACCA (discussed further below). At this time, the parties do not have a stipulation regarding interstate nexus on the firearm.

### C. Defendant's Prior Criminal Convictions

In the event the defendant decides not to stipulate to his felon status under *Old Chief*, the Government intends to introduce records and testimony concerning the following felony convictions.

| OFFENSE | JURISDICTION | DATE OF CONVICTION (on or about) | SENTENCE |
|---|---|---|---|
| Third Degree Assault – Substantial Bodily Harm | Mille Lacs County, MN | 7/26/2006 | 12 months and 1 day, stayed – served 127 days |
| First Degree Burglary - Assault | Saint Louis County, MN | 1/19/2011 | 54 months |
| Second Degree Assault | Saint Louis County, MN | 8/22/2014 | 52 months |
| Simple Robbery | Beltrami County, MN | 8/22/2014 | 48 months |
| Third Degree Assault – Substantial Bodily Harm | Polk County, MN | 11/23/2016 | 33 months |
| Felon in Possession of a Firearm | Polk County, MN | 11/23/2016 | 68 months |

In addition, because *Rehaif v. United States*, 139 S. Ct. 2191 (2019), now requires that the Government prove that the defendant *knew* he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, in the absence of a stipulation, the Government's evidence would include references the length of the sentences imposed in these cases—since in all of them, the defendant received sentences that in fact exceeded one year in prison.

Finally, even if the defendant enters into an *Old Chief* stipulation, if the defendant elects to testify, the Government has informed the defense (and reaffirms in its Rule 609

6

motion filed herewith) that it intends to impeach the defendant under Rule 609(a)(1)(B) regarding the felony convictions listed in that motion.

### D. Intrinsic Evidence of the Defendant's Gun Possession

The government may call victim D.F. and other witnesses to testify about seeing the defendant with the same or similar firearm in the month prior to the charged incident. This testimony is evidence of the defendant's singular and continual possession of the firearm that was seized in November 2020. Moreover, the defendant's close-in-time prior possession of the firearm provides fair background and context for the charged possession count in the Indictment. "Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred. Such evidence completes the story or provides a total picture of the charged crime." *United States v. Brooks*, 715 F.3d 1069, 1076 (8th Cir. 2013). Alternatively, the testimony is admissible under Federal Rule of Evidence 404(b) to show the defendant's knowledge, intent, absence of mistake, and lack of accident related to the alleged gun possession. The United States has notified the defense that it may call these witnesses in its case-in-chief or rebuttal case.

### E. ACCA "Separate Occasions" Requirement

Recent case law from the Supreme Court has given rise to an additional requirement at trial under the Armed Career Criminal Act. As set forth below, the parties anticipate requesting a bifurcated proceeding, to take place after any guilty verdict on the felon-in-possession charge, regarding the requirement under the ACCA that the defendant's predicate convictions were for offenses "committed on occasions different from one

another." 18 U.S.C. § 924(e)(1). The parties also anticipate a stipulation on this distinct issue.

In *Wooden v. United States*, 142 S. Ct. 1063 (2022), the Supreme Court held that ten burglaries committed over the course of a single night in adjoining storage units were not offenses "committed on occasions different from one another" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). In so holding, the Court rejected a rule that offenses committed sequentially necessarily occur on different occasions. Instead, the Court held that the different-occasions inquiry "is more multi-factored in nature":

> Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events. Proximity of location is also important; the further away crimes take place, the less likely they are components of the same criminal event. And the character and relationship of the offenses may make a difference: The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion.

*Wooden*, 142 S. Ct. at 1070-71. This "holistic" approach, the Court predicted, "will be straightforward and intuitive," and "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions." 142 S. Ct. at 1068, 1071.

The Court in *Wooden* expressly left open the question "whether the Sixth Amendment requires that a jury, rather than a judge, resolve whether prior crimes occurred on a single occasion." 142 S. Ct. at 1068 n.3. The Eighth Circuit has held in the past that the "separate occasions" requirement can be determined by the sentencing court. *See, e.g., United States v. Harris*, 794 F.3d 885, 887 (8th Cir. 2015); *United States v. Faulkner*, 826 F.3d 1139, 1148 n.6 (8th Cir. 2016). This summer, following *Wooden*, the Eighth Circuit

8

noted that "[t]hough the constitutionality of this practice has been recently questioned, . . . it remains the law of our circuit. And nothing in *Wooden* changed this. We are bound by prior panels." *United States v. Stowell*, 40 F.4th 882, 885 (8th Cir. 2022). Currently, the parties in *Stowell* are briefing a request for this issue to be taken en banc, *see* Appeal No. 21-2234 (8th Cir.), and thus the legal landscape in this circuit alone may continue changing in the near future.

If the Sixth Amendment requires the "separate occasions" question to be submitted to a jury, this requirement would apply in all cases, even those, such as this one, where it can hardly be disputed that the defendant's prior convictions were for separate criminal episodes on entirely different occasions. And in light of the "multi-factored" and "holistic" (i.e., fact-bound) inquiry now required by *Wooden*, the Government believes there is at least a material likelihood that the law is moving in that direction. *See, e.g., Mathis v. United States*, 579 U.S. 500, 511-12 (2016) (observing that a judge "can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of"). Accordingly, the Government believes that the most cautious and prudent course is for the "separate occasions" element of the ACCA statute to be submitted to and found by the jury in this case. This is the most protective procedure that will ensure the integrity of the sentencing record (if the defendant is convicted) against any future shifts in the legal landscape. The Government understands that the defense takes the position that this is still a sentencing issue that may be decided by the sentencing judge. However, the defense has agreed to stipulate to the necessary facts if the Court decides to bifurcate the proceedings and submit the issue to the jury, per the United States' request.

The parties are attuned to the potential prejudice that could result to the defendant from this issue being decided at the same time as primary guilt. Accordingly, the parties anticipate proposing the following procedure. During the primary trial, the jury will decide the question of whether the defendant is guilty of being a felon in possession of a firearm based on an *Old Chief* stipulation and disclosure only of the fact that he has a prohibiting felony conviction. If the jury returns a guilty verdict for that crime, the jury will be called back for a very brief "phase 2" trial on the "separate occasions" issue. The parties likewise anticipate stipulating during "phase 2" that the defendant has been convicted of the crimes listed in the indictment, and that the offenses all took place on separate occasions. The parties will then request that the Court instruct the jury using Proposed Jury Instruction #31 (filed today), after which the parties can present the stipulation and making any closing remarks to the jury. The jury can then render a verdict as proposed on the special verdict form filed herewith.

F.   **Request for *Frye-Lafler* Colloquy**

The Government requests to make a brief record at the pretrial conference pursuant to *Missouri v. Frye*, 566 U.S. 134 (2012) and *Lafler v. Cooper*, 566 U.S. 156 (2012). Specifically, the Government has previously extended a proposed plea agreement to the defendant. Mr. Cutbank has rejected this offer multiple times, and it has now been withdrawn. However, to avoid any later disputes over whether this offer was appropriately communicated to him, the Government respectfully requests the opportunity to make a brief record concerning the principal terms of the offer and the defendant's likely sentencing exposure after trial, and to confirm that the defendant received the offer, had

sufficient time to discuss it with his counsel, and rejected it.  *See Frye*, 566 U.S. at 146 (suggesting that "formal [plea] offers can be made part of the record . . . before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence").

Dated: October 11, 2022 　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　ANDREW M. LUGER
　　　　　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Brad Endicott*

　　　　　　　　　　　　　　　　　　　　　　　　BRADLEY M. ENDICOTT
　　　　　　　　　　　　　　　　　　　　　　　　RUTH S. SHNIDER
　　　　　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorneys